asks an argument. And between each argument, there'll be a little pause because we sanitize for obvious reasons these days. But otherwise, it's good to be back in open court. And Ms. Saddler pleads the court. My name is Nicole Carper, and I'm here this morning arguing on behalf of the appellant, Martece Saddler. This case arises out of a search of Ms. Saddler's residence by law enforcement in June of 2019 after a shooting happened in a parking lot outside of the apartment building that Mrs. Saddler's residence was located in. Shortly after the shooting took place, law enforcement obtained a search warrant seeking to obtain certain evidence that they believed would be located in unit one of the apartment building. During the execution of the warrant, a shotgun was located in Ms. Saddler's bedroom underneath clothing. The shotgun and other contraband were seized, and ultimately a confession was obtained with Ms. Saddler regarding the seized weapon. Saddler was ultimately charged with possession of a firearm by a prohibited person and possession of an unregistered firearm in violation of United States codified law. It was, it's not disputed it was visibly a sawed-off shotgun? What's disputed, Your Honor, is that it wasn't immediately visible at the point that law enforcement... I understand that. Yes. When he picked it up. Okay. Yes, that is not disputed. A motion to suppress evidence was filed in this case raising, I guess, what I would characterize as four different issues. First and foremost, that the warrant that was ultimately obtained was invalid and unconstitutional in that it violated Ms. Saddler's protections as guaranteed to her by the Fourth Amendment to the United States Constitution. Ms. Saddler alleged that the warrant was overbroad and unparticularized. And with that, in that respect, the district court agreed with Ms. Saddler as, I would say, the three areas that Ms. Saddler was challenging as far as the information or the items that the warrant sought to locate. The second argument is that the warrant was not supported by probable cause. The third argument was that the good faith exception to the exclusionary rule should not be applied in this case. And lastly, that the plain view doctrine should not apply. I think, judges, this matter has been fully briefed for you coming from the district court. And I would like to focus much of my time as it relates to the good faith exception and the plain view doctrine application in this case. I think that's the proper focus. Thank you. And I'm going to start a little bit out of order. To me, in terms of this case, I think the issue that jumps out at us the most is whether, in a situation where a warrant has been declared unconstitutionally but the court uses the good faith exception to the exclusionary rule, does that then give the ability for law enforcement acting under the authority of that invalid warrant to utilize the plain view doctrine to seize evidence or contraband that wasn't specifically looked for in the warrant itself? Are you familiar with our divided panel opinion on U.S. v. Strand? Off the top of my head, Your Honor, no, I'm not. What I was hoping to talk with you about today with respect to the plain view doctrine is just that hard, fast rule that one of the predicate elements of the plain view doctrine is that law enforcement has a legitimate and lawful basis to be on the premises in order to be able to seize items under the plain view. And I think where Ms. Sadler would disagree with the district court determination would be that it's an extension of the good faith exception to the Fourth Amendment protections doesn't automatically give law enforcement the right to then say that they have legal status to seize any item that they see that's in plain view. Counsel, what's your closest case? I would say, well, in preparation for today, what I was looking at was a case that is just a Westlaw opinion. And it's a case out of South Dakota. The United States v. Arredondo. So it's a district court case? Yes. I bet. Go ahead. And I also would refer the court to U.S. v. Leon. I think Goth is also very important to this matter. But I think the issue related to the exception Goth, did you say? Goth, G-O-T-H, Judge. Go ahead. Thank you. You were on the South Dakota case. Yes. And in that particular case, which the court was taking a look at a situation where law enforcement was dispatched to an apartment building. There had been a report of a female screaming. There was yelling. Law enforcement came to the residence. The door was open just a crack. They advised, you know, that they were concerned that there was someone who, a female that might be in distress. There was not a consent to entry. Law enforcement came in, ultimately located the female. She was not in distress. She was heavily intoxicated. And there was a lot of back and forth that was happening. But ultimately, in that particular case, there were glass vials that were present that law enforcement saw. And so that issue was trying to talk about, I mean, not specifically good faith exception like we have here, but talking about when you come in under the auspices of, in this case, community caretaker, was there sufficient information that law enforcement could reasonably rely on that they perceived at that point that would allow them to go beyond the point that they came into the apartment under, which again, I think the court had some questions or concerns about how entry was made in that case, but said even accepting that entry was allowable under community caretaker, there was nothing inherently incriminating about those glass vials that would have been immediately apparent to law enforcement, and therefore found that the Plain View Doctrine should not apply in that case and excluded that evidence. So the lawful presence, don't you have to win the probable cause argument to defeat the law, to also prevail on the lawful presence? Well, excuse me, Your Honor, I'm sorry, I didn't mean to interrupt the court. No, no, no, I'm fine. Thank you. I think that the lawful presence is almost, to me, the analysis for lawful presence centers around the point or what was going on at the time that law enforcement entered the apartment. I think it's important in this case to note that there had already been a protective suite before the warrant was executed. That's not at issue. That's not at issue. And it's very clear from the affidavit that was submitted by the officer in this case that they were looking really specifically for one camera. And that was the camera that could be observed from the outside, from the parking lot, showing the location of where the shooting took place. Well, do we have the rookie who filled out the warrant and the affidavit, and then apparently didn't bring the affidavit, but he explained what they were looking for? And that's another... Now, do we know what that explanation was? Do we have his version in a deposition or otherwise? There is the transcript from the suppression hearing, but other than that, no. Does he say that his briefing was, we're looking for one camera? Yeah, the testimony, my reading of the testimony suggests to the court that he was only looking for the one camera. When their seizures are the functional equivalent of a general warrant. Exactly. So how, was there a credibility finding on this point? Or did the district court not consider it? The law enforcement, or excuse me, the district court felt that there was enough information, that essentially the warrant in and of itself wasn't facially invalid. And so therefore, the officer had a legitimate good faith reliance on the face of the warrant. Wait, wait, that was the government's position. But the magistrate judge said it was not a valid warrant. Exactly. But there was probable cause in the affidavit. So therefore, I infer there's lawful presence. And then the magistrate, district court affirms a good faith finding. Right. The way that I interpreted the district court's analysis was that they found the warrant wholly invalid. But then found that it wasn't, that they would allow the evidence to be used on the basis of the good faith exception. Because they found that the officer's reliance on the warrant was not in bad faith. In other words, that the warrant was not invalid on its face in such a way that any reasonable law enforcement officer should have known better. Than to act under the protection of the warrant, if you will. Did the briefing include mentioning of a SIM card? Yes. Well, storage. Did the officer testify at the suppression hearing not just looking for the camera itself, but a SIM card? Right. And that correlates, I think, as well to some of the vagueness in the application, as well as in the warrant itself. Where we're looking for that unspecified storage device. And so, the concern with that type of language is it's such a generic class of language. That when we're talking about telephones, computers, any kind of device where you can store information or access the internet. Which, you know, this is what they're trying to find. Is because they got information that there was this dispute on Facebook between two women. And there was this, at least, you know, understanding that one of those women lived in Unit 1. Not Ms. Sadler, but a different person that lived in Unit 1. So, I think, you know, in fairness to the position of the government. I think what law enforcement would say is, you know, we're just looking for anything that would document that. But specifically for that particular camera. And so, then we have this other very generic and broad language that talks about storage device. It doesn't specify electronic storage device. It doesn't really specify the... The government isn't challenging that. True. It seems to me your problem here is the good faith finding. And the probable cause to look for the camera in which I would include the SIM card. And that's what the officer was specifically looking for when he came upon the shotgun. That seems like pretty good plain view law. But is it, to me, then that would circle back around to the vagueness of it. And I just, if I could, pose a question. But no, I mean, the officer on the scene, he's not worried about vagueness. But the authority, okay, so with respect to the good faith exception. And with respect to the legal ability to be in the apartment at that time. The good faith exception requires that the officers rely in good faith on the warrant. The problem with the warrant and the probable cause is everything that's looked for in that warrant is supposed to be independently supported by probable cause. You can't have one thing in the warrant... But what he was specifically looking for when he found the contraband. Certainly. Was within the probable cause. Well, but I mean, there's a concern there that in an essence the vagueness of the... You have a warrant with probable cause and the people executing it treat it like a general warrant and grab his personal papers and so forth. But the only thing at issue is the shotgun, which was found by a search that was within the four corners of the probable cause. So where's your case that says that's bad? Well, I think first and foremost, there was nothing immediately illegal about the shotgun when they see it. The butt of the shotgun... That's a different issue. He's looking under where the shotgun is for the SIM cards, right? Well, if you look at the testimony, though, that the detective or, excuse me, the law enforcement officer gave at the suppression hearing relative to that issue, he says, you know, he sees the gun. He doesn't grab it because he's looking for a SIM card. He grabs it because he says he needs to secure it for his safety. And that was a position that the district court did not give credence to. The district court... Didn't reject it. Well, the district court instead found that because almost like the moving of the clothes was pursuant to looking for the SIM card, which I think is kind of where you're coming from, Your Honor. And what we're submitting to you is there's most certainly a line of cases, and they're cited in the brief, that talk about that any manipulation of items for purposes of, you know, and then having the plain view come into effect is problematic. Oh, the phonograph case. Yeah. So in that sense, you know, the position that we present to you is that when the officer opens up that closet and then there's the shelf with the clothing on it and he moves the clothing, all he sees is the butt of that gun. And there's nothing inherently illegal about that. And it's not until he pulls it out from there, not for search purposes for a SIM card, I mean, that's the argument later. But at that point, he's saying, I pulled that gun out because I'm concerned about my safety. I mean, and this is a situation where the apartment was cleared. Nobody was there. Other law enforcement were present on the scene. You know, the safety argument, I think, didn't pass muster with the district court. And we submit to this court that it shouldn't pass muster today. Thank you. So what's the attack on the good faith fight? Well. That was your third issue. Yes. And, of course, our plain view debate is on the assumption that there was good faith. But why is that finding bad? Because that the warrant on the face of it, if we look to the four corners of the warrant itself, which does not incorporate the affidavit, that the officer executing on that warrant should have known under a reasonably objective standard that the warrant was invalid. Well, they weren't even looking at it. They were listening to the briefing. Well, I mean. Although there was a warrant. And that's part of the problem in this case. But what's your best case for that makes the entire search invalid? Not that position, Your Honor, but the fact that we have a warrant that is vague. And in other cases where the courts have looked at that, they've said, well, even if the face, the warrant itself is vague, if it incorporates an affidavit and those two items are brought to the location. I understand that. We don't have that here. Right. We should have. Because, I mean, the officer should have had it there. Right. But that's a mistake. That's not a constitutional violation. What brings this situation outside Leon? Well, I think the stronger position is really the issue related to the plain view aspect. And that is the three criteria that have to be in play for the plain view doctrine to apply. And our position is, and we're asking this Court to find, that when you're already using the good faith exception to the exclusionary rule, which is, that therefore does not transform into giving the officer independent legal, a legal ability to say that they're lawfully on the premises. One's a rule of exclusion. One is relating to a constitutional analysis of the protections that are guaranteed to us by the Fourth Amendment. Thank you. I'm out of time. Thank you. Ms. Carper, the Court notes that you're appearing under this Criminal Justice Act. Yes. We appreciate that. Thank you. Ms. Larson. Good morning. My name is Connie Larson. I'm here from the U.S. Attorney's Office in the District of South Dakota. And we're here to respectfully request that the District Court's order denying the motion to suppress be affirmed. I know the Court spoke mostly with Ms. Carper about the good faith and whether the seizure of the firearm was proper. So I will head straight to those issues, if that's appropriate. And would you agree that the execution of the warrant, the executing officers treated it like a general warrant? I would not, Your Honor. Taking his private papers? Your Honor, I think it was. The Kindle? Your Honor, well, I think the Kindle was certainly covered by the items that were in the warrant. I understand there were concerns about the vagueness of that description, but that was certainly within what the officers believed that day that they had the authority to search for. Well, let's just take the private papers. Your Honor. Well, let's go back to the early days of the Fifth, Fourth, Fifth, and Sixth Amendments. And, Your Honor, I think if you look at the private papers. That was a general warrant rummaging. I understand that, Your Honor. And they had no constitutional basis to do that. So why is this seizure defensible? Well, Your Honor, I think a couple of things. First, I think the officer who found the shotgun was asked about what he was told to look for. And he advised cameras, cell phones, SIM cards. And what camera did they have probable cause to seize other than the one in the window? Well, Your Honor, I guess other than the one in the window, I'm not entirely certain. I suppose there could have been. Or looking for any other camera. I suppose. They went beyond the legitimate probable cause from the get-go because the warrant was unconstitutionally drafted. And I disagree with that they went beyond from the get-go, Your Honor, because what they were told to look for were those items. I'm not saying that the executing officers did this on purpose. But constitutionally, they were briefed to look for things there was no probable cause to look for. And they seized them and seized more. Well, I think if you look at the return, I think if you look at the officers' objective actions that day, they went and got a warrant. I'm talking about seizing private papers, et cetera. Okay. They went and got a warrant. They briefed the officers on what they were looking for. And I think if you look at the return of. . . Anybody but Dunn? Anybody but Dunn. Pardon me? Anybody but Officer Dunn do the briefing? Not that I'm aware of, Your Honor. Okay. Well, you said they. Oh, I apologize. The police department representative. So, yes, Detective Dunn would have done the briefing. Or Rookie. Yes. But when you look at their objective actions that day, what you see is they're acting consistently with the warrant that they have in hand. And what they seize, if you look at the return of search warrant and inventory, which was presented, is they're not seizing all sorts of things. They are seeking or found a camera. And then they found. . . In addition, they found some drugs that were tested. They seized things that were in their view encompassed by the warrant. Correct. Which made the warrant invalid. This. . . By an unchallenged. . . By a finding of the magistrate judge, it's unchallenged on appeal. I understand that, Your Honor. The warrant was overbroad. And even if their seizures were within the scope of the warrant, they were beyond a probable cause. I disagree with that, Your Honor. I think the court found that there was probable cause, particularly. . . Yes, but based on the affidavit. Correct. Which the executing officers didn't have. I understand that, Your Honor. And that's why we're here also talking about the good faith exception. Because the officers were there that day. And again. . . There's case law that says there's no good faith exception unless they're functioning within the lawful scope of the warrant. Are you familiar with the U.S. Fees Trant? I am not, Your Honor. I apologize for that. But I think objectively, again, if you look at what these officers did that day, they got the warrant. They executed the warrant. And when you look at the return, this is, again, well before any lawyer or judge has been involved and questioned any part of the warrant. And what they seized listed on the return of search warrant and inventory indicates they were following the mandates of the warrant. The only items that were seized beyond that were some cocaine that was field tested at the scene. And this short barreled shotgun. So things that essentially were found that were illegal in nature and known to be illegal in nature as soon as they were seen. Well, I mean, they have to be reasonable scope of the search. Correct. The place to be searched within an apartment has to be within the scope of the probable cause.  They've got the camera in the window. And they're looking for these social media devices that were also covered by that. So they're searching for cell phones, other small things of that nature. Why a cell phone? Because, Your Honor, the person could use the cell phone to make the social media, the dispute on social media that existed. And there's no question that that existed. That's in the warrant. That's not been questioned, that social media dispute. And it could have happened on multiple versions of social media. The magistrate judge certainly didn't think anything of your social media argument. I mean, the warrant identifying social media was a key part of the invalidity. I'm not sure it was correct, but that's what we have. I understand that, Your Honor. You can search and seize for media when you may need a second warrant. Correct. That's correct, Your Honor. The magistrate judge didn't recognize that. That's correct, Your Honor. So that's part of the record that we're, that's the hand we're dealt. I understand that, Your Honor. And so when you look at their, again, objectively that day, the things that they're looking for include things like cell phones and other small items. The officer in this case is pulling things off a shelf as he's searching. Now, I don't disagree that Eighth Circuit case law says the officer can't seize the firearm solely for the purpose of protection. But I do think the officer can handle that firearm for two reasons. One, I think he gets to look at what's under it and behind it. You don't get to place a gun on top of your drugs, for example, in a different search warrant scenario. And therefore, we can't pick up the firearm to look if a baggie of methamphetamine is underneath that. We absolutely get to do that in that scenario. I do also think that in this case the officer gets to handle that firearm to make it safe while he is in there. So I don't disagree with the not being able to seize it that day because of if it hadn't been a short-barreled shotgun. But I do disagree that the officer, I think he gets to handle it to make it safe while he's in that room. And I do think that's part of what he did here. And again, he is searching something on a shelf. If you look at the shelf pictures beforehand, you'll see there are lots of things on that shelf. And he's removing them, and he finds the firearm as part of that. Correct? That's the first thing he sees, and he said it during his testimony, the first thing he sees. I don't think that's your biggest hurdle. Second Circuit Senior Judge Timbers has written panel opinions for the First Circuit and the Tenth Circuit. At his conclusion in Fusillo for the First Circuit, it is clear to us that the agents executing the warrants did not act in good faith, as that term was explained in Leon. Armed with warrants already drawn in the broadest manner, the agents exceeded even that authority. Therefore, no good faith. The entire seizure, all the seizures were unconstitutional. And he wrote the same for a Tenth Circuit panel. Are you familiar with those cases? I am not specifically with those, Your Honor. I am familiar. And for the Tenth Circuit, he relied in part on our decision in Strand. So nobody found the relevant cases here. And I apologize for that, Your Honor. But what I've... Well, what's our closest Eighth Circuit case, counsel? Your Honor, I guess the cases that I looked at, I looked at Legg, I looked at Morris. I understand neither of those is an Eighth Circuit case on the lawful presence pursuant to the warrant. And also, as I look at the warrant itself, I'm looking under Gros. And the only argument on good faith is that the warrant was so facially deficient that no officer could presume it was valid. And we're just not in a Gros situation. We are not in a situation where there's either no description at all, or the description carries over and says that you're searching a person when you mean to be searching for property. So we have a warrant that to the officers looks valid. They execute objectively when they're doing that execution. They are looking for things that are consistent with what's within that warrant that the magistrate judge authorized them to do. And so I do believe they fall under good faith. Counsel, do you have the quotation, the best on-point quotation from the hearing here, apparently believed, about what the briefing officer told them? I do, Your Honor. It's on page 46 of the — the briefing officer did not testify about this. But the searching officer did. Did the briefing officer not even testify in this case? He did testify. Oh, he did testify. And, Your Honor, I questioned him, so. No, no. But you didn't ask him about that. I did not. But someone else said what — go ahead and tell me. The searching officer said we were told — Begin with a quote. Do quote marks and tell us. Okay. This is his answer. The question is, quote, and at what point — at that point, what were you told? Answer. Quote, we were going to complete a search warrant, and we were looking for any evidence of recording devices, end quote. The question, and so what types of things would you have been looking for? Answer. Cameras, cell phones, SIM cards. And then there's a further description of the SIM card being like an inch in size. And then he goes on to describe. So that's the sorts of things they knew they were looking for. And is this the person who actually grabbed it, by the way? This is the person who found the firearm, yes. Right. Who grabbed it. Go ahead. Yes. So given that, Your Honor, I do think the officers, again, are absolutely acting in good faith. And objectively, when you look at it, they aren't just seizing anything and everything out of the house. They are narrow in their scope. And the return indicates that. And their actions on that day indicate that. They only seized the things that they essentially, as law enforcement, couldn't walk away from, a short shotgun and some drugs. Other than that, the items all were covered by what was authorized by the search warrant. I thought there were private papers in the inventory of what was seized. Your Honor, there were miscellaneous documents with the names Christina Haney and Martise Sadler. I guess I would argue that those two or those items may not have been covered. But what they would show is indicia of who lives in that residence. That wasn't. They didn't need it. Well, Your Honor, I guess for trial purposes. You know, let's take their bank statements because we might be able to find something down the road from that. Well, Your Honor, for trial purposes, though, if the person came in and said, that wasn't my apartment, I don't know what you're talking about, those items of mail would have been important to the officers at that time to establish who was living at the residence. Sounds like a civil discovery standard, though, doesn't it, counsel? I guess I, but proving control over the residence would certainly be important for the criminal case. So that's what we'd be arguing here. Did you ever get to the closest state circuit case? What do you think the closest state circuit case to this case is? Factually, legally, or some way? Your Honor, and again, I'd have to rely on my brief for that. I know they were briefed on what they found. I know the good faith and plain view were both covered there. But again, I look at the overall picture, both as to the good faith and to the seizure itself, are U.S. Supreme Court cases, Leon and Groh. So I think those are probably the most important for this purpose. And again, as I indicated, I know there was discussion about the lawful presence under the search warrant when it was discussed. I realize they're not eighth circuit cases, but we cited both Legg and Morris for the issue of the officers being able to be present. And again, to be able to look where the items are found, the Wyoming v. Houghton, again, U.S. Supreme Court cases, we can move things. So all of those show, again, lawful access to the items that are seen here. And I would also say in terms of moving the things that could be searched, the eighth circuit has handed down McManaman, Hughes, and Weinbender. Those are also cited in the brief. So you familiar with a case called Shcherba, S-C-Z-E-R-B-A? Yes, Your Honor. Okay. Yes. How close is this case to that case? We think it's very close to that case. And I apologize, Your Honor, for not coming up with that one. But yes, we do think it's very close to that case. What we have that's a little bit different here, the only thing that we're missing is the affidavit. We don't know whether the affidavit made it to the – it was not testified that the affidavit made it to the search itself for the briefing purposes. So that is the one item that's missing from that case. But other than that, we believe that it's close to – as close to this case as the eighth circuit has. Do you know how general – and I'm sorry, I don't. Do you know how general the warrant was there? I'm trying to remember, Your Honor, and I apologize. I know it didn't identify the items to be seized. And that is the big difference for here. But I don't remember if it was one where there was a cut-and-paste error or there wasn't a description at all. I just don't remember off the top of my head, and I apologize. But as I said, the difference for that case is that here we did have a description of property to be seized. And, again, the return and their actions that day showed that they followed that. If there's nothing further, again, we're asking that the – How about the – I mean the – you know, Part 5 and Strand start – our opinion in Strand starts, the holding of Leon and Shepherd is designed to apply to cases when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. This is not such a case. The warrant did not authorize the seizure of ordinary household items. And we do not believe there is an objectively reasonable basis for the postal inspectors to believe that it did. But, Your Honor, we're not dealing with ordinary household things. We're dealing with something that is incriminating on its face as we're doing the search. Those were included within what was seized. Understood, Your Honor. And if we were here, I guess, talking about those papers, that maybe that would be a different situation. I mean, this line of cases, therefore, invalidates the whole Leon argument because the premise of Leon is not present. I disagree that the premise of Leon is not met here, Your Honor. We do have a warrant. We went back. We got a warrant. We didn't just seize things as we were doing the walk-through. It would have to act within its scope. And we do have probable cause for items to be seized within that residence that dealt with that social media dispute. So I think they get to be searching for those cell phones and those small items like that. Well, it's kind of a taint issue. If the warrant's overbroad but it has a sound core and the officers, in good faith, act within the scope of the whole warrant, including its invalidity, but see something in plain view that, well, during the part of the search for which there was probable cause, does the rest taint it? And some of these cases say yes. Understood, Your Honor. And you didn't brief those. Okay. Correct, Your Honor. Strand is very interesting because Judge Bowman wrote the panel opinion and then descended from it in part. Judge Richard Arnold was in the majority, and I dare say knowing those two that they would have carefully collaborated to put it together that way. And where they disagreed is the line here. And I apologize that we missed that one, Your Honor. Certainly, if the court would like additional briefing, we'd be happy to provide that. Thank you. I have nothing further. Thank you. I'll give you a minute for rebuttal, Ms. Carper. Thank you, judges. I think in rebuttal what I'd like to point out is the actual listing of the items that were ultimately seized pursuant to this invalid warrant. Digital photos, three cameras, two security cameras, a box of 20-gauge shotgun shells, although law enforcement knew that the weapon in question was a 40-gauge, a computer monitor, not a storage tower, a monitor, a Kindle, miscellaneous documents with names Christina Haney, and Martiz Sadler, an iPod, which if you can remember those, just usually for purposes of storing music. Counsel, I hate to interrupt you. Since you have only a minute, do you want to apply to the Shcherba case or however you say it, S-Z-E-R-B-A case? Right. So I think in this case that the distinguishing characteristics here is that we have the same law enforcement officer that's applying for the warrant, obtains the warrant, and then is the briefing officer on location. I think we have to operate under the record that says that the application for warrant, which auspiciously gave some specificity for purposes of this record, was not taken to the scene, and certainly the law enforcement officers that were doing the search hadn't seen it or hadn't seen the warrant itself. Thank you. Thank you, counsel. It's an interesting and unusual case, and it's been well-briefed and argued, and we'll take it under advice.